## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## STATESBORO DIVISION

LASHAWN DEANGELO GRIER,

               Plaintiff,

     v.

WARDEN MARTY ALLEN, et al.,

               Defendants.

CIVIL ACTION NO.: 6:18-cv-52

### ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff brought this 42 U.S.C. § 1983 action while incarcerated at Georgia State Prison in Reidsville, Georgia, to challenge certain conditions of his confinement. Doc. 1. The Court **GRANTS** Plaintiff leave to amend, doc. 9. In his Complaint, as amended, Plaintiff asserts various claims under § 1983 related to events at Valdosta State Prison ("VSP Claim") and related to events at Georgia State Prison ("GSP Claims").[1] Docs. 1, 9. For the reasons set forth below, I **RECOMMEND** that the Court **DISMISS** all of Plaintiff's GSP Claims and **TRANSFER** Plaintiff's VSP Claim to the District Court for the Middle District of Georgia . I also **RECOMMEND** the Court **DENY** Plaintiff *in forma pauperis* status on appeal as to the claims recommended for dismissal.

---

[1] Plaintiff's VSP Claim is asserted against Defendants Upton and Moss ("VSP Defendants") and his GSP claims are asserted against Defendants Allen, Shepard, Nelson, Adams, Odum, the Georgia Department of Corrections, Georgia State Prison Classification Committee, and Defendants "in charge of [the] Georgia Department of Corrections' policy(s) and department 'customs' of operational procedures" ("GSP Defendants").

## BACKGROUND[2]

### I.      Events at VSP

Plaintiff's claims arise from a series of occurrences and transactions following a "institutional shakedown" of dorm 1 of the D-building at Valdosta State Prison on March 13, 2018.  Doc. 9-1 at 1.  During the shakedown, an unnamed member of the TACT team ordered Plaintiff and Namon Wilcox, Plaintiff's cellmate, to "strip down to t-shirt[s], boxers[,] and shower shoes" and to "step to the back of the cell facing the wall."[3]  Id.  After strip searching Plaintiff and Wilcox, officers removed them from the cell.[4]  Officers brought Plaintiff and Wilcox to the television room and ordered them to be silent and to stand facing the wall with other inmates.  Id.  Plaintiff denies that he spoke and alleges he complied with all orders.  Id.  However, Defendant Moss accused Plaintiff of speaking.  Id.  Defendant Moss then "pulled on" Plaintiff's arm and said, "[S]ince Plaintiff wanted to talk, he had somewhere for him."  Id.  Several other inmates, including Wilcox, Patrick Butler, Leon Pugh, and Mario Williams, spoke up and told Defendant Moss that Plaintiff complied with Moss's instruction to remain silent.  Id.  Defendant Moss let go of Plaintiff's arm and, using profanity, ordered the inmates to remain facing forward with their eyes on the wall.  Id.  Plaintiff raised his hand.  Id. at 1–2.  Defendant Moss pushed Plaintiff into the wall and, again using profanity, ordered Plaintiff to face the wall, be quiet, and not ask questions.  Id.

---

[2]      During review under 28 U.S.C. § 1915A, "[t]he complaint's factual allegations must be accepted as true."  Waldman v. Conway, 871 F.3d 1283, 1289 (11th Cir. 2017).

[3]      Plaintiff refers to his cellmate as both Namon Wilcox and Namon Wilson.  Id.  For purposes of this pleading, the Court will refer to Plaintiff's cellmate as Namon Wilcox.

[4]      At the time, Plaintiff and Wilcox shared cell 68 in the D-building.  Id.

The television room soon "got loud again," and Commanders McCollum and Watkins entered the room.  Id.  Plaintiff requested to speak with Commander McCollum, and McCollum pulled Plaintiff to the side.  Id.  Plaintiff explained to McCollum that Commander Hall took and damaged some of his property during a shakedown a month and a half earlier, in February 2018. Id.  Plaintiff filed a grievance (Grievance Number 261191) about that incident, and he was, at that time, waiting on a response to the grievance.[5]  Id.  Plaintiff thought prison officials had not yet responded because Plaintiff did not name Commander Hall in the grievance or because Plaintiff lacked information about prison policy.  Id.  Plaintiff wanted to speak to McCollum to ask about following up on his grievance.  Id.

Plaintiff writes that "[a]t this moment, Facilities Director Steve Upton intervened" and told Plaintiff, "Come here.  I have a policy for you."  Id. at 2.  Defendant Upton escorted Plaintiff from the television room and ordered officers to get Plaintiff a pair of pants but not to let Plaintiff put the pants on "until he get[s] to ID" and to "have him ready to go on the bus."  Id. When Plaintiff asked where he was going, Defendant Upton stated, "You wanted policy, right? You'll get it on high max!  That's where you're going."  Id.  Plaintiff responded, "So you're going to transfer me to high max because I asked about policy because my property was taken, lost, and damaged?"  Defendant Upton replied, "I have over 100 beds open on [the] Tier II program and I am waiting to make some examples."  Id.

Officers then escorted Plaintiff (with his pants draped over his shoulder) to "ID."  Id.  A few hours later, officers brought two other inmates—Tyrrell and Gaye—to the holding cell next

---

[5]     The Court does not construe Plaintiff's reference to the February 2018 events at Valdosta State Prison as an attempt to bring a separate claim for this incident.

to Plaintiff's.[6]  Eventually, Sergeant Knowles brought Tyrrell and Gaye their property but told

Plaintiff "the Captain was personally inventorying" his property.  Id.  Plaintiff received his

property for a few hours later, but Plaintiff does not state who brought him his property.[7]  Id. at

3.  He did not receive a receipt.  Id.

## II.    Events at GSP

Plaintiff, Tyrrell, and Gaye were placed in a van and transported to Georgia State Prison.

Id.  The three arrived around 6:00 p.m. that evening.  Id.  Officer Damento and Defendant

Adams questioned Plaintiff about his security threat status and gang affiliation, and Plaintiff

informed both that he was not affiliated with any gangs, including the Bloods.  Id.  He told

Defendant Adams that Defendant Upton transferred him to Georgia State Prison because he

"ask[ed] a TACT Member about policy."  Id.  Defendant Adams asked Plaintiff why he was

classified as a security threat individual ("STI").  Id.  Plaintiff said he did not know, but he

believed it may be related to a lawsuit he filed against Valdosta State Prison officials.  Id.  Prison

officials then escorted Plaintiff, Tyrrell, and Gaye to the E-building and placed Plaintiff in cell

E4-15 with an inmate named Kevin Martin.  Id. at 4.  Martin is a "known profiled Crip."  Id.

Plaintiff, accused of being a Blood, shared a cell with Martin from March 13, 2018 until March

15, 2018.  Id.  Plaintiff also noticed he did not receive some of his property (specifically, a fan

and two packs of batteries).  Id.

Two days later, on March 15, 2018, Lieutenant Shoemaker and Counselor Gates came to

E4-15 and informed Plaintiff he would be reassigned to Tier II.  Id.  Plaintiff was assigned to

---

[6]     Plaintiff spells Inmate Tyrrell's name in several different ways in his Amended Complaint.  See Doc. 9-1 at 2–4.  For purposes of this Report and Recommendation, the Court will utilize the above spelling.

[7]     Plaintiff writes that "[t]he IRT" separated his state and personal property after he received his property but before his transport to Georgia State Prison.

Tier II because he was a "noted threat to safe and secure operations of the facility" and because he participated "with other Blood gang members in a disturbance during an institutionalized shakedown" on March 13, 2018.  Id.  Plaintiff protested, stating he was not a Blood, that he did not participate in a disturbance at Georgia State Prison, and that he did not receive a disciplinary report for his supposed participation.[8]  Id.  Counselor Gates told Plaintiff he would be able to appeal his placement in Tier II.  Id.

After Counselor Gates and Lieutenant Shoemaker left E4-15, Martin became "very inquisitive" about "whether Plaintiff was [a] Blood or not."  Id. at 4–5.  Plaintiff explained that he was not, but prison officials considered Plaintiff to be a Blood.  Id.  Plaintiff alleges that prison officials placed him in an "unsafe predicament" and risked his safety by placing him in a cell with "a documented and known Crip" and then "insinuat[ing] that [Plaintiff] may be a "Blood" member.  Id.  Later, Officers Fisher and Cox escorted Plaintiff to Tier II and placed him in cell 13 in building K-1.  Id.  Sergeant Tarver inventoried Plaintiff's property but did not provide him a receipt.  Id.  Plaintiff alleges that, when prison officials returned his property to him, "numerous items were missing."[9]

Plaintiff appealed his assignment to Tier II, and Defendant Nelson denied Plaintiff's appeal on March 20, 2018.  Id. at 4.  In this denial, Defendant Nelson wrote, "Offender will remain in Tier II.  Warden Allen and S.E. Regional Director Shepard advised."[10]  Id.

---

[8]     Later in his Complaint, Plaintiff alleges that he received his offender disciplinary history, which showed "report #753308 was dismissed" on May 22, 2018.  Id. at 6.  He also refers to an "unsanctioned" disciplinary report.  Id. at 7.

[9]     It is not clear when Plaintiff received his property after leaving cell E4-15.  He writes that he "received property taken on 03/15/2018 approximately two weeks later, on 9/15/2018."  Id.

[10]     In his Amended Complaint, Plaintiff refers to multiple letters written to prison officials, including an April 14, 2018 letter to Defendant Adams.  Id. at 5.  Plaintiff alleges this letter discussed a prior statement from Defendant Adams that there was "no reason to hold" Plaintiff on Tier II.  Id.  It is not

While assigned to Tier II, Plaintiff experienced breathing issues due to an allergic reaction to mold in his cell.  Id. at 7–8.  He received a nasal spray to help his breathing, but prison officials did not transfer him to a different cell despite Plaintiff's requests.  Id.  Some of his laundry and a blanket went missing, and Plaintiff had "difficulties obtaining replacements" despite assistance from prison staff.  Id.  He also alleges he was deprived yard time, sanitation, and showers.  Id.  He had to clean his cell with a ripped shirt and soap.  Id.  He spent three days cleaning "the crust off of the [toilet] bowl" with a used toothbrush.  Id.

Plaintiff also "had problems" obtaining legal materials and case law from March 16, 2018 to April 11, 2018, rendering him unable to appeal the Supreme Court of Georgia's ruling related to "his criminal conviction."  Id. at 5.  On April 11, 2018, Plaintiff wrote a letter "to library staff to get supplies and law material."  Id.  He did not file a grievance because "he already had two active grievances" pending (Grievance Number 261191, related to the February 2018 property issue, and Grievance Number 263709, regarding the alleged retaliation).  Id.  He received legal materials on May 16, 2018—the same day the deadline to appeal his criminal conviction expired. Id.

On September 13, 2018, Plaintiff entered Phase III, the last phase of the three-phase Tier II program.  Id. at 7–8.  He met with Defendant Adams, who documented Plaintiff's concerns that he was wrongfully assigned to Tier II and that "he should be awaiting bed space on Tier I or pending assignment to general population."  Id.  Plaintiff again appealed his assignment, and Defendant Shepard denied Plaintiff's appeal on October 4, 2018.  Id.  Plaintiff writes that both Tyrrell and Gaye "are on Tier I awaiting transfer to general population" in a different prison.  Id.

---

clear when Plaintiff alleges Defendant Adams made this statement.  Additionally, on July 15, 2018, Plaintiff wrote to "MFCO Flower, who is the STG coordinator, to have the STI and Blood label moved off his file."  Id. at 5.  In his reply, Flowers stated Plaintiff "was not validated as a gang member, but only a Security Threat Individual" because of the disturbance at Valdosta State Prison.  Id.

On March 16, 2018, Plaintiff filed a grievance related to Defendant Upton's retaliation against him (Grievance Number 263709).  Id. at 5–6.  The warden rejected this grievance on May 1, 2018 on the grounds that Plaintiff grieved "more than one issue"—namely, property, transfer, and involuntary assignment to administrative segregation.  Id.  Plaintiff appealed the denial on May 9, 2018, arguing Grievance Number 263709 "was about [Defendant] Upton transferring Plaintiff during a shakedown because [Plaintiff] requested" information about a policy because prison officials lost and damaged his property in the February 2018 shakedown.  Id.  Plaintiff appealed the denial on May 9, 2018 and was awaiting a response to his appeal when he filed his Complaint.  Id.

### III.    Procedural History

On April 30, 2018, Plaintiff filed this action against Defendants Allen, Shepard, Nelson, and the Georgia Department of Corrections.  Doc. 1 at 1.  The Court granted Plaintiff's motion to proceed *in forma pauperis* on June 15, 2018.  Doc. 3.  On October 15, 2018, Plaintiff filed a Motion to Amend.  Doc. 9.  In his Amended Complaint, Plaintiff seeks to add new claims against new Defendants.  Doc. 9; Doc. 9-1.  As additional Defendants, Plaintiff names Steve Upton, TACT Commander Moss, Unit Manager Odum, Brian Adams, the Georgia State Prison Classification Committee, and "those in charge of Georgia Department of Corrections' policy(s) and department 'customs' of operational procedures."  Doc. 9 at 1.  As explained below, Plaintiff could amend to his Complaint as a matter of course.  Therefore, the Court considers Plaintiff's original Complaint, as well as his proposed Amended Complaint (referred to his Report and Recommendation collectively as Plaintiff's "Amended Complaint").

## IV.    Plaintiff's Claims

Plaintiff asserts one claim arising from events at VSP (i.e., the VSP Claim) and several other claims arising from events at GSP (i.e., the GSP Claims).  Plaintiff's VSP Claim stems from his allegation that Defendants Upton and Moss retaliated against Plaintiff for Plaintiff filing a lawsuit against VSP employees.  Plaintiff contends Upton and Moss transferred Plaintiff from VSP to GSP in retaliation.

Plaintiff's GSP Claims arise from four sets of factual allegations and can be summarized as follows:

- *Tier II Claims*: Plaintiff alleges certain Defendants improperly placed and held him in Tier II at GSP and improperly rejected his appeal to being placed in Tier II.  Plaintiff asserts this claim against Defendants Allen, Adams, Shepard, Nelson, Odum, the Georgia Department of Corrections, and the GSP Classification Committee.  Plaintiff asserts Defendants' conduct violated his rights under the Fourteenth Amendment to the U.S. Constitution.

- *Gang-Affiliation Claims*.  Plaintiff alleges Defendant Adams placed him in an unnecessarily dangerous situation by identifying him as a member of the Bloods to another inmate affiliated with a rival gang.  Plaintiff asserts that Defendant Adams' conduct violated his rights under the Eighth Amendment to the U.S. Constitution.

- *Access-to-Courts Claims*. Plaintiff alleges Defendant Allen deprived him of access to necessary legal materials while he was housed at GSP.

- *Deprivation of Property Claims*: Plaintiff alleges certain Defendants lost or destroyed his personal property.  It is unclear against whom Plaintiff asserts this claim.  Plaintiff asserts

Defendants' conduct violated his rights under the Fourth and Fourteenth Amendments to

the U.S. Constitution.

Doc. 9-1.[11]

As relief, Plaintiff requests: (1) release from the Tier II program and assignment to

general population; (2) expungement of Disciplinary Report Number 753308 from his

institutional file; (3) declaratory judgment, essentially, that Defendants violated Plaintiff's rights

as alleged; (4) criminal charges under 18 U.S.C. §§ 241 and 242 against Upton, Moss, Odum,

Adams, Allen, and Shepard; (5) $15,000 in punitive damages against Upton, Moss, Odum,

Adams, Allen, Shepard, and Nelson; (5) $5,000 in punitive damages against the Georgia State

Prison Classification Committee; (6) $30,000 in punitive damages against the Georgia

Department of Corrections; and (7) "any other relief" to which it appears Plaintiff is entitled.[12]

Doc. 9-1 at 8–9.

## STANDARD OF REVIEW

Plaintiff is bringing this action *in forma pauperis*. Under 28 U.S.C. § 1915(a)(1), the

Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff

submits an affidavit that includes a statement of all of his assets, shows an inability to pay the

filing fee, and also includes a statement of the nature of the action which shows that he is entitled

to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is

---

[11]     In his Complaint, as amended, Plaintiff fails to clearly associate individual Defendants with the factual bases for his claims against them or to indicate the state constitutional grounds upon which his claims are based. The Court has construed Plaintiff's pleadings liberally, as it must, and has endeavored to identify all of Plaintiff's claims and the factual bases for those claims.

[12]     Plaintiff requested somewhat different relief in his original and proposed amended complaints. Docs. 1 at 9 & 9-1 at 6. It appears that Plaintiff intended to supersede the request for relief in his original Complaint with the request for relief in his Amended Complaint, given that the later request is broader and, for the most part, encompasses the relief requested in the original Complaint. The Court, therefore, only considers the request for relief in the proposed Amended Complaint.

9

frivolous, malicious, or if it fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

The Court looks to the instructions for pleadings contained in the Federal Rules of Civil Procedure when reviewing a complaint on an application to proceed *in forma pauperis*. <u>See</u> Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under § 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" <u>Napier v. Preslicka</u>, 314 F.3d 528, 531 (11th Cir. 2002) (quoting <u>Bilal v. Driver</u>, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). <u>Thompson v. Rundle</u>, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. <u>Twombly</u>, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual

power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys . . . ." (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003))). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

### I.   Plaintiff's Motion to Amend

On October 15, 2018, Plaintiff filed a Motion asking the Court to grant him leave to amend his Complaint. Doc. 9. "A plaintiff has a right to amend a complaint once as a matter of course so long as no responsive pleading has been filed." Toenniges v. Ga. Dep't of Corr., 502 F. App'x 888, 889 (11th Cir. 2012). "[P]arties may be added or dropped when an amendment is made to a complaint as a matter of course." McLellan v. Miss. Power & Light Co., 526 F.2d 870 (5th Cir. 1976), *modified on other grounds*, 545 F.2d 919 (5th Cir. 1977); Henry v. Youngstown Buick/Pont/GMAC Truck Co., No. 1:11-cv-3464, 2012 WL 13009227, at *1 (N.D. Ga. May 30, 2012); Pretty Punch Shoppettes, Inc. v. Creative Wonders, Inc., 750 F. Supp. 487, 493 (M.D. Fla. 1990). While a represented party "waives his right to amend his complaint as a matter of

course when . . . counsel files an unnecessary motion for leave to amend," a pro se litigant retains

the right to amend without court permission even when leave of court is improperly requested.

Hoke v. Lyle, 716 F. App'x 930, 931 (11th Cir. 2018); Toenniges, 502 F. App'x at 889; Dollar v.

Coweta Cty. Sheriff Office, 446 F. App'x 248, 249 n.1 (11th Cir. 2011); Brown v. Johnson, 387

F.3d 1344, 1348–49 (11th Cir. 2004).

In his Motion, Plaintiff requests leave of court to file an Amended Complaint.  Doc. 9.

He attached a copy of his proposed Amended Complaint to his Motion.  Doc. 9-1.  Plaintiff's

proposed Amended Complaint contains more detailed factual allegation and names six new

Defendants, including two fictitious Defendants.  Doc. 9; Doc. 9-1.  Because Plaintiff's

Complaint has "not yet been served" on any Defendants and no Defendant has filed a responsive

pleading, Plaintiff retains the right to amend his Complaint once as a matter of course without

court permission.  Oliver v. Fuhrman, 695 F. App'x 436, 439 (11th Cir. 2017); see also Fed. R.

Civ. P. 15(a)(1).  Accordingly, the Court **GRANTS** Plaintiff leave to amend.[13]

## II.     Entity Defendants

### A.      Georgia Department of Corrections

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States . . . ."  West v. Atkins, 487 U.S. 42, 48 (1988); see

Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995).  Additionally, the plaintiff

"must show that the alleged deprivation was committed by a person acting under color of state

law."  West, 487 U.S. at 48; see also Hale v. Tallapoosa, 50 F.3d at 1582.

---

[13]       The Court deems Plaintiff's Complaint amended as of the issuance of this Order.  See Carter v.
Church, 791 F. Supp. 297, 298 (M.D. Ga. 1992) ("[A]n amended complaint [must] be filed after leave to
amend is granted, unless the court specifically rules otherwise by including in its order language to the
effect that the complaint is deemed amended.").  The Court **ORDERS** the Clerk's Office to file Plaintiff's
proposed Amended Complaint, doc. 9-1, as a separate entry on the docket.

Plaintiff names the Georgia Department of Corrections as a Defendant and asserts that the Department of Corrections violated his Fourth and Fourteenth Amendment rights.[14]  Doc. 1 at 1; Doc. 9-1 at 8.  "However, 'a state and its agencies (such as the Georgia Department of Corrections) are not 'persons' who may be sued under § 1983.'"  Gresham v. Lewis, No. 6:15-cv-86, 2016 WL 164317, at *2 (S.D. Ga. Jan. 13, 2016) (quoting Darrough v. Allen, No. 1:13-cv-57, 2013 WL 5902792, at *3 (M.D. Ga. Oct. 8, 2013)); see, e.g., Gooch v. Ga. Dep't of Corr., No. 5:13-cv-317, 2013 WL 6002895, at *1 (M.D. Ga. Nov. 12, 2013) (dismissing a § 1983 claim brought against the Georgia Department of Corrections for alleged constitutional violations because the Georgia Department of Corrections "is an arm of the State and therefore not a 'person' for purposes of § 1983"); Williams v. Ga. Dep't of Corr., No. 6:12-cv-050, 2012 WL 3911232, at *1 (S.D. Ga. Aug. 6, 2012) ("Because the Georgia Department of Corrections is a state agency, it is not a 'person' subject to suit under § 1983."); cf. Lawal v. Fowler, 196 F. App'x 765, 768 (11th Cir. 2006) (quoting Ga. Insurers Insolvency Pool v. Elbert County, 368 S.E.2d 500, 502 (Ga. 1988)); Lovelace v. DeKalb Cent. Prob., 144 F. App'x 793, 795 (11th Cir. 2005) (finding a city police department is not an entity that can be sued under § 1983 because the department is "merely the vehicle through which" the city government fulfills one of its functions).  Furthermore, the Eleventh Amendment immunizes the Georgia Department of Corrections from suits for damages.  Stevens v. Gay, 864 F.2d 113, 115 (11th Cir. 1989) ("The Eleventh Amendment bars this action against the Georgia Department of Corrections . . . .");  Rega v. Georgia, No. 1:15-cv-087, 2016 WL 1317693, at *6 (S.D. Ga. Apr. 1, 2016); Gresham,

---

[14]     Plaintiff, in his Motion to Amend, indicates he desires to sue "those in charge of GDC policy(s) and department 'customs'" of operational procedures."  Doc. 9.  Construed liberally, it appears Plaintiff is attempting to sue the Georgia Department of Corrections to attack the Department's policies and customs. The Court considers this allegation to name the Georgia Department of Corrections as a Defendant.

2016 WL 164317, at *2.  Accordingly, I **RECOMMEND** the Court **DISMISS** all of Plaintiff's claims against the Georgia Department of Corrections.

> **B.**     **Georgia State Prison Classification Committee**

Plaintiff names as Defendant the Georgia State Prison Classification Committee.  Doc. 9 at 1.  As a general rule, fictitious party pleading is not permitted in federal court.  Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010).  "It is important," however, "to distinguish suing fictitious parties from real parties sued under a fictitious name."  Dean v. Barber, 951 F.2d 1210, 1215–16 (11th Cir. 1992).  Claims made "against an unnamed defendant may proceed when the plaintiff's description of the defendant is sufficient for the party to be identified even though his actual name is unknown."  Skinner v. Sproul, No. 1:14-cv-174, 2015 WL 196191, at *5–6 (M.D. Ga. Jan. 14, 2015) (quoting Dean, 951 F.2d at 1215–16).  Additionally, incarcerated, pro se plaintiffs may maintain claims "against unnamed defendants where allegations in the complaint make clear the plaintiff could uncover the names through discovery."  Bowens v. Superintendent of Miami S. Beach Police Dep't, 557 F. App'x 857, 862 (11th Cir. 2014) (holding, in a § 1983 prison conditions lawsuit, that the "district court . . . erred in concluding that the "Arresting Officers" were not proper defendants"); Minnis v. Keaton, No. 17-cv-20575, 2017 WL 2471080, at *8 (S.D. Fla. May 8, 2017) ("So, for example, naming a defendant such as "Chief Deputy of the Jefferson County Jail," "Governor of Alabama," or even "Arresting Officers" are permissible because either the real party's name will be uncovered through discovery, or the description is sufficiently specific to allow for service of process.").

The Georgia State Prison Classification Committee is a proper fictitious Defendant against which a nonfrivolous, properly alleged claim could proceed.  Construed liberally, it appears Plaintiff seeks to name the individual members of Georgia State Prison's Tier II

Classification Committee as Defendants.[15]  See Ramey v. Bryson, No. 5:16-cv-00561, 2017 WL

2569609, at *3 (M.D. Ga. Apr. 27, 2017).  In this action, Plaintiff has already named some of the

members of the Classification Committee as Defendants.  Plaintiff could likely discover the

identities of additional, unnamed Classification Committee members during discovery.  See id.

(allowing a plaintiff-prisoner's claim against "Defendant, John Doe/Jane Doe, Tier 2

classification of Hancock State Prison" to proceed because the plaintiff could "discover the

identities of those on the 'tier two classification committee' at Hancock State Prison" during

discovery); Harris v. McKie, No. 4:18-cv-040, 2018 WL 3766687, at *2 (S.D. Ga. July 16, 2018)

(allowing a claim against "unidentified [Savannah Chatham Metropolitan Police Department] or

task force agents" to proceed because "it appears likely that the agent's identities could be

discovered through a review of the arrest report or other discovery . . . .").  However, as

discussed below, Plaintiff does not plead any nonfrivolous claims involving events at Georgia

State Prison for which the Georgia State Prison Classification Committee could be liable.  Thus,

he does not maintain a cause of action against this fictitious Defendant.

Provided the Court adopts the other recommendations made below, I also

**RECOMMEND** the Court **DISMISS** Defendant Georgia State Prison Classification Committee.

---

[15]     It is unclear whether, in naming the Georgia State Prison Classification Committee, Plaintiff intends to sue the Committee as an entity or whether Plaintiff desires to bring an action against individual but currently unidentified members of the Classification Committee.  To the extent that Plaintiff desires to sue the Georgia State Prison Classification Committee as an entity, his claim would be subject to dismissal because, like the Georgia Department of Corrections, the Committee has no independent legal identity and is not a person or entity against which a § 1983 action can be brought.  Cf. Lawal, 196 F. App'x at 768; Lovelace, 144 F. App'x at 795.

III.    **Available Relief**

A.    **Compensatory and Punitive Damages**

"Section 1997e(e) of the [Prisoner Litigation Reform Act ("PLRA")] bars prisoner civil actions for 'mental or emotional injury suffered while in custody without a prior showing of physical injury.'" Young v. Smith, No. 6:17-cv-131, 2018 WL 3447179, at *14 (S.D. Ga. July 17, 2018); see also 42 U.S.C. § 1997e(e); Al-Amin v. Smith, 637 F.3d 1192, 1197 n.5, 1199 & n.9 (11th Cir. 2011) (finding that § 1997(e) bars monetary damages for all constitutional claims in absence of a physical injury); Williams v. Brown, 347 F. App'x 429, 436 (11th Cir. 2009) ("[C]ompensatory damages under § 1983 may be awarded only based on actual injuries caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated." (emphasis omitted)).

However, "[w]hile § 1997e(e) precludes a prisoner from seeking compensatory or punitive damages without a prior showing of physical injury, it does not preclude a prisoner from seeking nominal damages." Hale v. Sec'y for Dep't of Corr., 345 F. App'x 489, 492 (11th Cir. 2009) (finding the trial court erred in not liberally construing a pro se prisoner's complaint to determine whether the plaintiff sought nominal damages); see Brooks v. Warden, 800 F.3d 1295, 1307 (11th Cir. 2015); Oliver v. Falla, 258 F.3d 1277, 1282 (11th Cir. 2001). "Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003) (remanding for a determination as to whether plaintiff-inmate was entitled to nominal damages); see also Jackson v. Hill, 569 F. App'x 697, 699 (11th Cir. 2014) ("[T]he district court should have considered whether Jackson could recover nominal damages despite his failure to request that relief[.]").

Here, Plaintiff does not allege any of Defendants' conduct resulted in a physical injury. Thus, he cannot sustain a request for compensatory or punitive damages. However, in his Complaint, Plaintiff also requested a declaratory judgment and "any other relief as it may appear that [Plaintiff] is entitled to . . . ." Doc. 9-1 at 9. Construed liberally, this amounts to a request for nominal damages. Boxer X v. Donald, 169 F. App'x 555, 558–59 (11th Cir. 2006) (finding that plaintiff-prisoner "did seek nominal damages when his complaint requested compensatory damages and 'any other relief the court deem[s] appropriate'"). For these reasons, I **RECOMMEND** the Court **DISMISS** Plaintiff's requests for compensatory and punitive damages pursuant to § 1997e(e). Plaintiff's requests for a declaratory judgment, injunctive relief, and nominal damages shall proceed.

### B.      Official Capacity Claims and Injunctive Relief

Plaintiff does not indicate whether he brings his claims against Defendants in their individual or official capacities. Docs. 1, 9-1. The Court construes Plaintiff's Complaint to allege claims against Defendants in both their individual and official capacities. See Smitherman v. Decatur Plastics Prod. Inc, 735 F. App'x 692 (11th Cir. 2018); Torres v. Miami-Dade County, 734 F. App'x 688, 691 (11th Cir. 2018). However, Plaintiff cannot sustain a § 1983 claim for money damages against Defendants in their official capacities. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–13 (1999). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Because a lawsuit against a state agency or a state officer in his official capacity is "no different from a suit against the [s]tate itself," such defendants are immune from suit under § 1983. Id. at 71.

Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as employees of the Georgia Department of Corrections. Accordingly, the Eleventh Amendment immunizes Defendants from suits for money damages in their official capacities. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims against Defendants in their official capacities for monetary relief. However, to the extent Plaintiff successfully states a constitutional claim, he may seek injunctive relief against any Defendant in his official capacity. Ex parte Young, 209 U.S. 123, 148–50 (1908). Therefore, the Court should **DISMISS** all claims for money damages against Defendants in their official capacities. Plaintiff's requests for equitable relief shall continue against Defendants in their official capacities.

**C.     Criminal Charges**

Plaintiff requests that criminal charges be levied against Upton, Moss, Odum, Adams, Allen, and Shepard under 18 U.S.C. §§ 241 and 242. "Sections 242 and 242 of Title 18 of the United States Code criminalize civil-rights violations." Pope v. Smith, No. CIV.A. 13-00345, 2014 WL 1760958, at *11 (S.D. Ala. May 1, 2014). The two Code sections "pertain to criminal law and do not provide a civil cause of action or any civil remedies." Thibeaux v. U.S. Atty. Gen., 275 F. App'x 889, 893 (11th Cir. 2008); Stoll v. Martin, No. 3:06-cv-180, 2006 WL 2024387, at *2 (N.D. Fla. July 17, 2006) ("Plaintiff's complaint fails to state a claim upon which relief can be granted under the criminal statutes 18 U.S.C. §§ 241 and 242, because a private citizen cannot initiate a federal criminal prosecution and because these statutes do not provide a private right of action for damages."). I, therefore, **RECOMMEND** the Court **DISMISS** Plaintiff's claim for relief under §§ 241 and 242.

**IV.     Frivolity Review of Plaintiff's GSP Claims**

Plaintiff's GSP Claims, all of which are asserted under § 1983, can be sorted into four

categories: (1) Tier II Claims: Plaintiff alleges certain Defendants improperly placed and held

him in Tier II at GSP and denied his appeal to being placed in Tier II, in violation of Plaintiff's

Fourteenth Amendment rights; (2) Gang-Affiliation Claims: Plaintiff alleges Defendant Adams

placed him in an unnecessarily dangerous situation by identifying him as a member of the

Bloods to another inmate affiliated with a rival gang in violation of his Eighth Amendment

rights; (3) Access-to-Courts Claims: Plaintiff alleges Defendant Allen deprived him of access to

necessary legal materials while he was housed at GSP; and (4) Deprivation-of-Property Claims:

Plaintiff alleges certain Defendants lost or destroyed his personal property in violation of his

Fourth Amendment and Fourteenth Amendment rights.  Doc. 9-1.  The Court now conducts the

required review under §§ 1915 and 1915A.

**A.     Tier II Claims**

Plaintiff alleges Defendants Allen, Adams, Shepard, Nelson, Odum, the Georgia

Department of Corrections, and the GSP Classification Committee violated his due process

rights under the Fourteenth Amendment by placing Plaintiff in Tier II and denying his appeal to

that placement.  Doc. 9-1 at 8.  The Due Process Clause of the Fourteenth Amendment provides

no state "shall . . . deprive any person of life, liberty, or property, without due process of law."

U.S. Const. amend XIV, § 1.  An inmate states a cognizable claim for the deprivation of his

procedural due process rights under the Fourteenth Amendment when he alleges the deprivation

of a constitutionally protected liberty or property interest, state action, and constitutionally

inadequate process.  Shaarbay v. Palm Beach Cty. Jail, 350 Fed. App'x 359, 361 (11th Cir. 2009)

(citing Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994)).

Prisoners may have a protected liberty interest in avoiding removal from general population and assignment to more restrictive forms of confinement.  "Determining whether one was deprived of liberty presents a unique challenge with prisoners, who are already deprived of their liberty in the ordinary understanding of the word."  Kirby v. Siegelman, 195 F.3d 1285, 1290 (11th Cir. 1999); see also Jacoby v. Baldwin County, 835 F.3d 1338, 1346 (11th Cir. 2016) (citing Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999)).  The Eleventh Circuit has identified two situations in which a prisoner—already deprived of liberty in the traditional sense—can be further deprived of liberty such that procedural due process protections are required: (1) when there is a "change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court[]"; and (2) when the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Kirby, 195 F.3d at 1291 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)); Jacoby, 835 F.3d at 1346.

Additionally, the Supreme Court has identified two situations in which a prisoner can be further deprived of his liberty such that due process is required.  Kirby, 195 F.3d at 1290–91. First, there is a protected due process liberty interest "when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court."  Id.; Sandin v. Conner, 515 U.S. 472, 484 (1995).  Importantly, however, this interest does not include "a liberty interest in avoiding transfer to more adverse conditions of confinement." Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  Secondly, a state-created due process liberty interest may arise "when the state has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit 'imposes

atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" <u>Kirby</u>, 195 F.3d at 1291 (quoting <u>Sandin</u>, 515 U.S. at 484); <u>see also</u> <u>Smith v. Deemer</u>, 641 F. App'x 865, 868 (11th Cir. 2016) ("Atypical and significant hardships must also be severe relative to regular prison."); <u>Jacoby</u>, 835 F.3d at 1346–47 ("This test examines the hardship imposed on the inmate relative to the 'basic conditions' of prison life."); <u>Magluta v. Samples</u>, 375 F.3d 1269, 1276 (11th Cir. 2004).

Plaintiff's confinement in Tier II administrative segregation, while tightly restricted, does not represent a change in conditions so severe that his present conditions of confinement essentially exceed the sentence imposed by a court. Accordingly, Plaintiff's placement in Tier II segregation does not implicate a liberty interest arising from the Due Process Clause itself.

As to the state-created liberty interest, Plaintiff describes missing laundry and blankets while in Tier II. He contends that he was deprived yard time, sanitation, and showers, and that he had to clean his cell with a ripped shirt and his toilet with a used toothbrush. Doc. 9-1 at 7. He also alleges he experienced minor health issues due to mold in his cell. However, Plaintiff offers few details about these conditions, and, importantly, does not explain how these conditions differed from the conditions in general population. Therefore, Plaintiff does not allege a non-frivolous procedural process claim. <u>See</u> <u>Smith v. Reg'l Dir. of Fla. Dep't of Corr.</u>, 368 F. App'x 9 (11th Cir. 2010) (finding no liberty interest existed where segregated inmate failed to show that segregation caused a major disruption to his environment compared to general population). Indeed, it is impossible to discern from Plaintiff's Complaint, as amended, what—if any— differences existed between the conditions in general population and Tier II. Therefore, I **RECOMMEND** the Court **DISMISS** Plaintiff's claims regarding his confinement in Tier II segregation.

**B.     Gang-Affiliation Claim**

Plaintiff brings a claim for violation of his Eighth Amendment rights against Defendants Upton, Moss, Allen, Shepard, Nelson, Odum, and Adams for allegedly identifying Plaintiff as a gang member to another inmate.  Doc. 9-1 at 8.  The Eighth Amendment forbids the infliction of cruel and unusual punishment.  U.S. Const. amend. VIII;  Terry v. Bailey, 376 F. App'x 894, 895 (11th Cir. 2010).  The Eighth Amendment "imposes a duty on prison officials" to "take reasonable measures to guarantee the safety of the inmates."  Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099–1100 (11th Cir. 2014).  "Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."  Purcell ex rel. Estate of Morgan v. Toombs County, 400 F.3d 1313, 1319 (11th Cir. 2005) (citing Farmer v. Brennan, 511 U.S. 825 (1994)).  However, prison officials are not automatically liable for "every injury suffered by one prisoner at the hands of another . . . ."  Bowen v. Warden, Baldwin State Prison, 826 F.3d 1312, 1320 (11th Cir. 2016) (citing Farmer, 511 U.S. at 834); Purcell, 400 F.3d at 1319.

To show an Eighth Amendment violation, a plaintiff must "allege facts sufficient to show '(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'"  Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (quoting Hale v. Tallapoosa, 50 F.3d at 1582).  "[A]n excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm."  Purcell, 400 F.3d at 1320.  The second element—defendants' deliberate indifference to that risk—has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."  Farrow, 320 F.3d at 1245 (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)).  The "subjective knowledge of a risk of serious harm" component requires a defendant to have "actual knowledge that an inmate faced a substantial risk of serious harm[.]"  Caldwell, 748 F.3d

22

at 1099.  In a failure to protect claim, a prison official must be faced with a known risk of injury that rises to the level of a "strong likelihood rather than a mere possibility."  Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and quotations omitted).

Thus, "[t]o be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.'"  Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9, 14 (11th Cir. 2010) (quoting Purcell, 400 F.3d at 1319–20).  "[S]imple negligence is not actionable under § 1983, and a plaintiff must allege a conscious or callous indifference to a prisoner's rights."  Id. (quoting Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982)); see also Carter v. Galloway, 352 F.3d 1346, 1350 (11th Cir. 2003) ("[M]erely negligent failure to protect an inmate from attack does not justify liability under section 1983 . . . .") (quotations and citations omitted).

Here, Plaintiff alleges that, after his transfer to Georgia State Prison on March 13, 2018, Defendant Adams questioned Plaintiff about his supposed affiliation with the Bloods gang. Doc. 9-1 at 3–4.  Plaintiff denied being a Blood, but claims that, at least at the time of his transfer, prison officials believed him to be.  Id.  He was then placed in a cell with Kevin Martin, an inmate known to prison officials as a member of the Crips, a rival gang.  Id.  Plaintiff remained in the cell with Martin for two days.  Plaintiff also contends that Lieutenant Shoemaker and Counselor Gates came to Plaintiff's cell and discussed Plaintiff's supposed gang affiliation with him, ostensibly in front of Martin, causing Martin to question Plaintiff about his gang affiliation.[16]

---

[16]     Lieutenant Shoemaker and Counselor Gates are not Defendants in this action.

Plaintiff's allegation that prison officials believed Plaintiff to be a Blood and yet assigned Plaintiff (even temporarily) in a cell with an inmate with a "documented" affiliation with a rival gang, in some circumstances, might constitute a non-frivolous showing of a substantial risk of serious harm.  However, Plaintiff does not allege any facts suggesting Defendants' deliberate indifference to that risk because Plaintiff fails to allege which Defendants—if any—bear responsibility for placing Plaintiff in the cell with Martin.  As to Defendant Adams, Plaintiff only alleges that Adams questioned Plaintiff about his affiliation, which does not suggest Adams was deliberately indifferent to any risk to Plaintiff.  Plaintiff fails to allege any facts connecting any other Defendant to these events.

Because Plaintiff does not allege which Defendants personally participated in the alleged constitutional violation, it is impossible to determine whether any Defendants possessed subjective knowledge of the risk of serious harm to Plaintiff, as the Eighth Amendment deliberate indifference prong requires.  See Robinson v. Owens, No. 5:13-cv-292, 2014 WL 2617281, at *5 (M.D. Ga. June 12, 2014) (dismissing an Eighth Amendment claim when the plaintiff failed to allege that "any particular Defendant was 'aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists' and that any specific Defendant also "'drew that inference'").  Thus, I **RECOMMEND** the Court **DISMISS** Plaintiff's Eighth Amendment claim.[17]

### C.    Plaintiff's Access-to-Courts Claim

Plaintiff alleges he was deprived of access to certain legal materials for a short period of time at GSP, which implicates an access-to-courts claim.  Doc. 9-1 at 5.  "[P]risoners have a

---

[17]    Plaintiff's Eighth Amendment claim does not concern the fictitious "Classification Committee" Defendant.  Plaintiff's placement in the cell with Martin occurred before his assignment to Tier II and, thus, before the involvement of the classification committee.

constitutional right of access to the courts." Barbour v. Haley, 471 F.3d 1222, 1225 (11th Cir.

2006); see also Lewis v. Casey, 518 U.S. 343, 343 (1996); Bounds v. Smith, 430 U.S. 817, 821

(1977); Chappell v. Rich, 340 F.3d 1279, 1282 (11th Cir. 2003) ("Access to the courts is clearly

a constitutional right, grounded in the First Amendment, the Article IV Privileges and

Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment.").  To have

standing to bring an access-to-courts claim, the "inmate alleging a violation of the right of access

to the courts must show an actual injury."  Bass v. Singletary, 143 F.3d 1442, 1445 (11th Cir.

1998) (citing Lewis, 518 U.S. at 349–50).  Not all denials of access result in injury.  Lewis, 518

U.S. at 354–56.  Rather, plaintiffs must show the denial of access related to a non-frivolous,

arguable underlying claim.  Harrison v. United States, 577 F. App'x 911, 913 (11th Cir. 2014).

Incarcerated individuals must identify the underlying claim with sufficient enough detail to "give

fair notice to the defendants" and show "the 'arguable' nature of the underlying claim is more

than hope."  Christopher v. Harbury, 536 U.S. 403, 416 (2002); Arthur v. Comm'r, Ala. Dep't of

Corr., 680 F. App'x 894, 903 (11th Cir. 2017); Harrison, 577 F. App'x at 912–13 ("[A] litigant

asserting an access claim must identify a colorable underlying claim, ancillary to the right of

access to the courts."); Cunningham v. Dist. Attorney's Office, 592 F.3d 1237, 1271 (11th Cir.

2010); Barbour, 471 F.3d at 1226.

Plaintiff asserts he experienced problems obtaining his legal documents and legal

reference materials from March 16, 2018 until April 11, 2018.  Doc. 9-1 at 5.  Plaintiff wrote a

letter to library staff on April 11, 2018 to obtain these materials.  Id.  However, he did not

receive any legal reference materials until May 16, 2018.  Id.  Thus, he could not timely appeal a

Georgia Supreme Court's decision related to his criminal conviction.  Id.  However, Plaintiff

does not allege that any Defendants were personally involved in the delay in obtaining his legal

materials.  Id.  Moreover, Plaintiff fails to show an appeal of his underlying criminal conviction

would be based on anything more than hope or speculation.  I, therefore, **RECOMMEND** the

Court **DISMISS** Plaintiff's access-to-courts claim.

      **D.**     **Deprivation-of-Property Claims**

     Plaintiff alleges that: (1) a fan, two radios, and two four-packs of batteries were missing

from his property when he arrived at GSP; and (2) "numerous items were missing" from his

property after he was moved from E4-15 to K1-13 at GSP.  Doc. 9-1 at 4, 8.  Plaintiff's

allegations potentially implicate the Fourth and Fourteenth Amendments.

     "The Fourth Amendment prohibits 'unreasonable searches and seizures' by the

Government . . . ."  United States v. Arvizu, 534 U.S. 266, 273 (2002).  "The applicability of the

Fourth Amendment turns on whether 'the person invoking its protection can claim a 'justifiable,'

a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government

action.'"  Gardner v. Rogers State Prison, No. 6:08-cv-016, 2009 WL 29572, at *4 (S.D. Ga. Jan.

5, 2009) (quoting Hudson v. Palmer, 468 U.S. 517, 525 (1984)).  Incarcerated individuals "do

not forfeit all constitutional protections by reason of their conviction and confinement in prison."

Simmons v. Williams, No. 6:14-cv-111, 2017 WL 3427988, at *16 (S.D. Ga. Aug. 9, 2017)

(quoting Bell v. Wolfish, 441 U.S. 520, 545 (1979)).  However, courts do not "recognize as

legitimate any subjective expectation of privacy that a prisoner might have in his prison

cell . . . ."  Hudson v. Palmer, 468 U.S. 517, 526 (1984).  "[A]ccordingly, the Fourth Amendment

proscription against unreasonable searches does not apply within the confines of the prison cell."

Id.; United States v. Vernon, 262 F. App'x 157, 158 (11th Cir. 2008) (finding incarcerated

individuals have "no legitimate expectation of privacy" regarding personal property stored in his

prison cell); Padgett v. Donald, 401 F.3d 1273, 1278 (11th Cir. 2005) ("Prisoners have no Fourth

Amendment rights against searches of their prison cells . . . ."); <u>Jones v. Morton</u>, No. 5:09-cv-028, 2009 WL 2900275, at *2 (S.D. Ga. Aug. 27, 2009) ("Plaintiff, as a prisoner, has no reasonable expectation of privacy in his prison cell and, therefore, cannot allege a Fourth Amendment violation when prison officials conduct a search or seizure.").

Because Fourth Amendment claims require the government to act unreasonably, when "the act of taking possession and the indefinite retention of the property are themselves reasonable, the handling of the property while in the government's custody is not itself a Fourth Amendment concern." <u>Gardner</u>, 2009 WL 29572, at *4 (citing <u>Hudson</u>, 468 U.S. at 540 (O'Connor, J. concurring)). Even "[t]he loss, theft, or destruction of property so seized" does not create a cognizable Fourth Amendment claim. <u>Id.</u> "Rather, improper inventories, defective receipts, and missing property have long been redressable in tort by actions for detinue, trespass to chattel, and conversion." <u>Hudson</u>, 468 U.S. at 540 (O'Connor, J. concurring). Questions of the adequacy and availability of such remedies are due process concerns which implicate the Fourteenth Amendment, not the Fourth Amendment. <u>Id.</u>; <u>Gardner</u>, 2009 WL 29572, at *4.

Plaintiff does not specify which of his factual allegations relate to his deprivation-of-property claim, but it appears Plaintiff contests the search and seizure of his property during his transfer from Valdosta State Prison to Georgia State Prison and his move from cell E4-15 to cell K1-13 at Georgia State Prison. <u>Id.</u> Because Plaintiff has no reasonable expectation of privacy in his prison cell, the prison's search and seizure of his property do not implicate the Fourth Amendment. <u>Id.</u> Plaintiff's claims of missing property are, therefore, not cognizable under the Fourth Amendment.

As to Plaintiff's Fourteenth Amendment rights, "[a]n inmate may bring a cause of action for intentional deprivation of property under the Fourteenth Amendment, even if claim is based

on de minimus pecuniary loss." <u>Gardner</u>, 2009 WL 29572, at *3.  However, "[t]he intentional

deprivation of property gives rise to a Due Process Clause violation only when the State fails to

provide an adequate post deprivation remedy.  <u>Baker v. Gregory</u>, No. 2:11-cv-028, 2011 WL

1541538, at *1 (S.D. Ga. Mar. 31, 2011); <u>see</u> <u>Hudson</u>, 468 U.S. at 533 ("[A]n unauthorized

intentional deprivation of property by a state employee does not constitute a violation of the

procedural requirements of the Due Process Clause of the Fourteenth Amendment if a

meaningful postdeprivation remedy for the loss is available.").  "The state of Georgia has created

a civil cause of action for the wrongful deprivation of personal property." <u>Byrd v. Stewart</u>, 811

F.2d 554, 555 n.1 (11th Cir. 1987) (citing O.C.G.A. § 51-10-1); <u>Wiggins v. Deal</u>, No. 1:18-cv-

116, 2018 WL 4701792, at *7 (S.D. Ga. Oct. 1, 2018) ("Georgia has created a civil cause of

action for the wrongful deprivation of personal property [which] covers the unauthorized

deprivation of an inmate's property by prison officials." (citing <u>Grant v. Newsome</u>, 411 S.E.2d

796, 799 (Ga. Ct. App. 1991)))

     Here, Plaintiff cannot bring a procedural due process claim for loss of his personal

property because an adequate post-deprivation remedy is available under Georgia law.

Moreover, Plaintiff completely fails to allege which Defendants were responsible for the missing

property after his initial transfer to Georgia State Prison and after his placement in Tier II.

     For these reasons, I **RECOMMEND** the Court **DISMISS** Plaintiff's deprivation-of-

property claims, whether the claims arise under the Fourth or Fourteenth Amendments.

**V.**    **VSP Claim**

     Plaintiff's final claim—the VSP Claim—alleges Defendants Upton and Moss retaliated

against him by transferring him to Georgia State Prison because Plaintiff asked questions about

Georgia Department of Corrections policies during the March 13, 2018 shakedown.  Doc. 9-1 at

1–4, 8.  However, the Court notes that the conduct giving rise to Plaintiff's retaliation claim occurred at Valdosta State Prison, which is located in the Middle District of Georgia.  Under 28 U.S.C. § 1391(b)(2), venue is proper in any judicial district where "a substantial part of the events or omissions giving rise to the claim occurred . . . ." § 1391(b)(2).  Green v. Roberts, No. 3:08-cv-362, 2008 WL 4559731, at *1 (N.D. Fla. Oct. 10, 2008) ("Venue for actions under 42 U.S.C. § 1983 is governed by 28 U.S.C. § 1391(b) . . . .").  The undersigned has recommended that the Court dismiss all of Plaintiff's other claims, and if the Court adopts the recommendations, only Plaintiff's retaliation claim will remain pending.  Because Plaintiff's remaining claim relates to actions which occurred in the Middle District, the interests of justice support transferring Plaintiff's remaining claim to that district.[18]  Harris v. Jail, No. 5:17-cv-26, 2017 WL 2590143, at *2 (S.D. Ga. Apr. 11, 2017); Thompson v. Belhomme, No. 3:12-cv-11, 2012 WL 1758734, at *6 (N.D. Fla. Apr. 30, 2012) (recommending the court transfer *sua sponte* plaintiff-inmate's claims under 28 U.S.C. § 1404(a)).  Thus, I also **RECOMMEND** the Court **TRANSFER** the retaliation claims against Defendants Upton and Moss to the Middle District of Georgia.

## VI.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis* as to any dismissed claims.  Though Plaintiff has not yet filed a notice of appeal, it would be appropriate

---

[18]     Plaintiff's Fourteenth Amendment claim regarding his missing property after his transfer from Valdosta State Prison to Georgia State Prison also, arguably, arises from events which occurred primarily in the Middle District.  As discussed above, however, Plaintiff cannot pursue this claim under § 1983 but rather must utilize the existing state-law remedy.  Because Plaintiff's Fourteenth Amendment claim would be subject to dismissal in the Middle District, the undersigned recommends the Court dismiss that claim rather than order its transfer.  See Harris v. Jail, No. 5:17-cv-26, 2017 WL 2590143, at *2 (S.D. Ga. Apr. 11, 2017) (dismissing a claim rather than transferring it when that claim would still be subject to dismissal in the other district).

to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact."  Napier, 314 F.3d at 531; see also Brown v. United States, Nos. 4:07-cv-085, 4:03-cr-001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal in regard to the claims recommended for dismissal in this Report.

## CONCLUSION

The Court **GRANTS** Plaintiff leave to amend, doc. 9.  Additionally, for the above-stated reasons, I **RECOMMEND** the Court **DISMISS** all of Plaintiff's claims against the Georgia Department of Corrections and against the Defendant Georgia State Prison Classification Committee and the other fictitious Defendants "in charge of [the] Georgia Department of Corrections' policy(s) and department 'customs' of operational procedures."  I **RECOMMEND**

the Court **DISMISS** Plaintiff's requests for money damages against Defendants in their official capacities, Plaintiff's request for punitive damages against Defendants in all capacities, and Plaintiff's requested relief under 18 U.S.C. §§ 241 and 242.  I **RECOMMEND** the Court **DISMISS** Plaintiff's GSP Claims.  Finally, I **RECOMMEND** the Court **DENY** Plaintiff *in forma pauperis* status on appeal as to these claims.  If the Court adopts this Report and Recommendation without modification, only Plaintiff's retaliation claim against Defendants Moss and Upton (the VSP Claim) will remain pending.  If so adopted, I further **RECOMMEND** the Court **TRANSFER** this action to the Middle District of Georgia.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Plaintiff.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 15th day of August, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA